# Smith *versus* Latour.

1. Duplicity in a declaration, and defects of form in setting out a good cause of action, cannot be taken advantage of *after verdict.* The *first* is cause for *special* demurrer, and the *last* is cured by the verdict.

2. Where an entire verdict was rendered in a case where the declaration contained several counts, some good, and one alleged to be bad, although the evidence may have been applicable to all of the counts, the Court which tried the cause might have entered the verdict upon the good counts; or where this has not been done, this Court may so enter it.

3. It was not error in the Court to refuse to instruct the jury that one of several counts in the declaration was defective; if defective, it was the subject of demurrer or of a motion in arrest of judgment.

ERROR to the District Court, *Philadelphia.*

This was an action on the case brought by John Latour *v.* Smith,

[Smith *v.* Latour.]

jr., Russell, and Blair, to recover damages for an alleged deceit, and also the amount of a promissory note alleged to have been drawn by William McMillan to his own order, endorsed by him, and held by Russell and Blair, two of the defendants below, by whom it was placed in the hands of Smith, the other defendant below, a merchandise broker, and by him passed to Latour, plaintiff below, in part payment for brandy. Smith negotiated with Cornelius Myers, also a broker, for brandy belonging to Latour, and left with him a memorandum of the note and references from whom McMillan's credit might be learned. Myers afterwards presented Smith's offer to Latour, who said he knew McMillan, he had dealt with him before, he was good enough. Smith was notified that Latour had accepted his offer; he gave Latour the note, paid him the balance in cash, took his receipt in settlement, received the brandy, and directed it into the possession of Russell and Blair, for whom it had been purchased.

Latour afterwards (it was alleged on the day following), learned that McMillan's credit was impaired, and the note might not be met at maturity; he then called on Smith and wished him to rescind the contract and return the brandy.

Smith replied that he had given him references and time to satisfy himself about McMillan's circumstances before the contract was confirmed; that he knew, at the time the agreement was made, that *he* acted in the matter as a broker; that the brandy had passed into other hands for whom he had bought it, and was then beyond his control. A similar request was alleged to have been made of Russell and Blair, but the brandy was not returned.

In the *first* count of the declaration it was alleged that Russell and Blair, holding and owning the note, knew that McMillan was insolvent, and that Smith, also, knew of his insolvency, yet that the defendants, intending to deceive, falsely pretended that they were desirous to purchase some brandy from the plaintiff, and asserted the note was good, meaning that McMillan was not insolvent, and that the note would be paid at its maturity, &c., and by force of the said *false and fraudulent representation*, and the *concealment of the said matters* so as aforesaid within their knowledge, the defendants induced the plaintiff to sell and deliver to them two half pipes of brandy, &c.

In the second count it was averred that the defendants being owners of the note of McMillan, and knowing him to be insolvent, intending to defraud the plaintiff, pretended and asserted that they wished to purchase some brandy, and would pay for it partly with the note, and the residue in cash, concealing from the plaintiff that McMillan was insolvent, and unable to pay the note.

The third count was in *trover.*

Cornelius Myers and other witnesses were examined. Myers, in the course of his examination, stated that Latour had agreed

[Smith *v.* Latour.]

to allow him a percentage on the sale in question, and that it had not been paid to him. His competency was objected to, but he was allowed to proceed. To this objection it was replied that his testimony was *against* his interest, as it tended to defeat a sale on which he was to get a commission.

After the testimony was closed, the Court having declined to order a nonsuit, the defendant's counsel proposed a number of points; viz.: 1. That the plaintiff cannot recover, unless he has shown that he took McMillan's note solely on the representations of Smith, and that Smith knew at the time his statement to be false, and made it for the purpose of defrauding the plaintiff. 2. There is no evidence against either of these defendants. 3. There is no evidence to sustain this action. 4. If the plaintiff received the note of McMillan, upon his (plaintiff's) own belief of its sufficiency, and receipted in full for payment of the brandy, he cannot recover. 5. That Smith gave plaintiff references, and requested him (plaintiff) to inquire and ascertain McMillan's circumstances before he took the note, and if the plaintiff was so negligent as not to inquire, he took the note of McMillan on his own knowledge and at his own risk. 6. The plaintiff must show affirmatively that falsehood was used with intent to deceive, and that it was solely on the faith of such false representations that the notes of McMillan were received. 7. The use of Smith's check by plaintiff, after McMillan's insolvency, affirms the sale, and the plaintiff cannot recover. 8. There is no evidence of a tender of the note of Mc-Millan, and therefore plaintiff cannot recover. 9. The plaintiff cannot recover for a joint conversion of the property, as there is no evidence that Russell and Blair ever got the brandy. 10. There is evidence that Latour took the note of McMillan on his own knowledge of McMillan's circumstances, and there is no evidence that he took the note on the representations of Smith. 11. There is no evidence of any knowledge in the possession of either Smith, Russell, and Blair, of McMillan's insolvency at the time of the sale. 12. There is evidence that McMillan was not insolvent at the time of the sale, and that he paid notes after the sale, and that his credit on the 28th day of December was generally good among merchants, and no evidence that it was at that time rumored that McMillan was insolvent. 13. There is no evidence to support the count for trover. 14. That the first count in the declaration is defective. 15. The third count in the declaration is not supported by any evidence of conversion.

FINDLAY, J., answered—That the first, fourth, and sixth points submitted by the counsel for the defendants were correctly stated, as regards the first count in the declaration.

But he answered the second, third, seventh, eighth, ninth, eleventh, thirteenth, and fifteenth points submitted by the counsel

for defendants, in the negative, and charged the jury that they were wrong in point of law.

That the fifth and tenth points were exclusively for the jury.

And to the fourteenth point, to wit, that the first count in the declaration is defective, he stated that it should have been demurred to by the defendants; or that they might move an arrest of judgment in case of the verdict being rendered against them. The counsel for the defendants excepted to the charge.

Verdict was rendered for the plaintiff.

It was, *inter alia*, assigned for error, that the Court refused to strike out the testimony of C. Myers; also to the admission of certain evidence referred to; and to the answers of the Court in the negative to the second and third points on part of defendants, and also to the answers to points from seventh to fifteenth inclusive; and to the refusal to instruct the jury as requested in the fifth point, and referring it to them.

*H. M. Phillips* and *Woollaston*, for the plaintiffs in error.—It was contended that the action being founded on falsehood and fraud, *both* must be proved. Falsehood without fraud is not sufficient: *Holt's Rep.* 386, Ashlin *v.* White.

2. The first count in the *narr.* contains two distinct causes of action, to wit: "by force and by means of the said false and fraudulent representations, and the concealment of the said matters so as aforesaid, within their knowledge the defendants did," &c.

It is a well settled principle in pleading, where there are several counts in the *narr.*, that more than one distinct cause of action shall not be contained in either count. *Stephens' Pl.* 265–6; 1 *Saund. R.* 58, note.

3. If the first count is not bad for duplicity, the second count does not contain a sufficient cause of action, and therefore the writ of error must be sustained.

4. There was not a joint conversion. Smith acted merely as a broker.

The verdict in this case was general, and if we have shown that one count in the *narr.* is bad, the writ of error must be sustained. 1 *Saund. Pl. & Ev.* 418.

In civil cases, the rule is settled that where a verdict was taken *generally*, and any *one* count is *bad*, it *vitiates* the whole: *Cowp.* 276, per Ld. MANSFIELD, Peake *v.* Oldham; 3 *Wils.* 185; 2 *Saund.* 171, b.; *Doug.* 722, 730; 3 *M. & S.* 110.

The same principle is recognised in Pennsylvania. Where there are several counts in the *narr.*, some of which are good and some bad, and the verdict is taken generally, the judgment will be reversed, although it is entered on particular counts supposed to be

good : 10 *Watts* 245, Harker *v.* Orr; 9 *Ser. & R.* 294, 297, Kline *v.* Wood.

*Guillou*, for defendant in error.—The jury have found the facts. They have found falsehood and fraud : 1 *Jones* 279.

2. The first count does not contain two distinct causes of action. But where a count sets out a good cause of action, unnecessary averments are surplusage.

3. The part of the first count objected to was the concealment. In the second count, the concealment is not alone alleged, but there was also alleged a fraudulent pretence of an honest desire to *purchase* the brandy, when no such desire existed. The making of a representation which the party making it knows to be untrue, and which is intended or calculated to induce the other to act on the faith of it, and he incurs damage, is a fraud in law : 3 *B. & Ald.* 114; 1 *Jones* 279 ; 43 *Eng. Com. Law* 634; 17 *Id.* 290.

A trial and verdict cure defects in a declaration, such as may be taken advantage of by special demurrer; 4 *W. & Ser.* 273, Insurance Co. *v.* Seitz; also 7 *Barr* 223, 241.

The Court will order judgment on the good counts : 7 *Barr* 392, Catherwood *v.* Kohn.

4. The jury have been satisfied of the conversion by defendants, and all discussion as to the weight of the evidence is unnecessary here.

The opinion of the Court was delivered, April 12, by

LEWIS, J.—Where the facts set forth in a declaration or plea do not, *in any form in which they may be stated*, constitute a good cause of action in the one case, or a valid defence in the other, the parties may, if they prefer that course, contest the facts in the first place before the jury, and afterwards call for the judgment of the Court upon them as found and set forth upon the record. But if the objections touch not the *substance*, but go merely to the *form* in which the facts are set forth, this course cannot be pursued. He that stands upon matters of form has a slippery footing; and if he slips at the time when the law requires him to stand, the objection is cured by his own inattention to the very matter which he charges upon his adversary. It is assuredly very late in the day to announce, in a decision of the highest Court in the state, that duplicity in a declaration, and defects of form in setting forth a good cause of action, cannot be taken advantage of after verdict. The first is cause for *special* demurrer only, 1 *Tidd* 647, and the last is cured by the verdict, 2 *Tidd* 826. The second count, it is true, is informal. But we can readily perceive therein the elements from which a formal declaration containing a good cause of action might have been constructed. The defend-

# 248

SUPREME COURT

[*Philadelphia*

[Smith *v.* Latour.]

ants below are therein charged with fraudulently obtaining goods from the plaintiff below by pretending and *asserting* that they would pay the *value*, in a note against McMillan, which, it is in effect averred they knew to be worthless. After verdict, we may understand this declaration as containing the averments that the defendants represented the note of McMillan to be good and valuable; that they knew at the time that this representation was false; that they intended, by means of this falsehood, to defraud the plaintiff; and that they thereby succeeded in fraudulently obtaining his goods. These facts, properly set forth, constitute a good cause of action. But if this were not the case, it does not follow that the judgment should be reversed. It is the ordinary case of one entire verdict upon several counts, some of which are good and one is supposed to be bad. In that case, although the evidence may have been applicable to all the counts, the Court below might have entered the verdict and judgment upon the good ones. Under the Act of Assembly, which authorizes this Court to enter the judgment which the Court below ought to have entered, and upon the general principles which now, independent of the Act of Assembly, govern the Courts in administering the law according to common sense and justice, this Court might now enter the verdict and judgment upon the counts admitted to be good. Having the whole evidence before us, we might do what was done in Catherwood *v.* Kohn, 7 *Barr* 392. But this is not necessary, as we are of opinion that the informality of the second count consists merely of the defective manner in which a good cause of action is set forth; and this, as already stated, is cured by the verdict.

The Court below was asked, in the fourteenth point, to instruct the jury that the first count in the declaration was defective; and it is here complained that the Court refused to give this instruction; and stated that the defendants should have demurred to it, or should move in arrest of judgment. This was undoubtedly correct. The jury were empannelled to try the issue *of fact;* not to assume the office of the Court, and determine the question of law arising upon the face of the declaration. What had the jury to do with the defects in the declaration? They were to ascertain whether the *facts*, which it alleged, were established by the evidence or not; and the *effect* of the finding was for the decision of the Court afterwards. To permit a party to obtain a verdict of not guilty, upon technical objections to the form of the declaration, would be a prostration of justice. The Court was perfectly correct in its view of this part of the case. Fifteen points were presented for the solution of the Court below, and there are nineteen specifications of errors here. But we perceive no error in any part of the proceedings below.

Judgment affirmed.